## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ERIKA BRUCE,

       Plaintiff,

   v.

SUNTRUST MORTGAGE, INC.,

       Defendant.

CIVIL ACTION FILE NO.

1:10-CV-657-JEC-RGV

### ORDER FOR SERVICE OF FINAL
### ORDER, REPORT, AND RECOMMENDATION

Attached is the Final Order, Report, and Recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and this Court's Local Rule 72.  Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of the receipt of this Order.  Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the district court and

any appellate review of factual findings will be limited to a plain error review.

United States v. Slay, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED**, this 19th day of April, 2010.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

ERIKA BRUCE,

           Plaintiff,

    v.

SUNTRUST MORTGAGE, INC.,

        Defendant.

CIVIL ACTION FILE NO.

1:10-CV-657-JEC-RGV

**MAGISTRATE JUDGE'S FINAL**
**ORDER, REPORT, AND RECOMMENDATION**

Plaintiff Erika Bruce ("plaintiff"), proceeding *pro se*, seeks to file her complaint without prepayment of fees and costs or security therefor pursuant to 28 U.S.C. § 1915(a).  [Doc. 3].[1]  After consideration by the Court of the affidavit of indigency, it is **ORDERED** that plaintiff's request to proceed *in forma pauperis* is **GRANTED** pursuant to 28 U.S.C. § 1915(a).  However, the Court must also determine whether plaintiff's proposed "Verified Complaint at Law" (the "complaint") is frivolous and, if so, must dismiss it without prejudice.  See 28 U.S.C. § 1915(e)(2); Neitzke v. Williams, 490 U.S. 319, 324 (1989).   For the following reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITHOUT**

---

[1] The Court denied plaintiff's initial request to proceed *in forma pauperis*, [Doc. 1], due to plaintiff's failure to declare under penalty of perjury that the information contained in the affidavit was true and correct by affixing her signature to the affidavit.  See [Doc. 2].  Plaintiff has submitted a new application, which she has signed under penalty of perjury.  [Doc. 3].

**PREJUDICE** as frivolous and that plaintiff's motion for a temporary injunction and restraining order, [Doc. 1-4], which plaintiff attached to her proposed complaint, be **DENIED**.

A.     **Frivolity Review**

A complaint is frivolous if "it lacks an arguable basis either in law or in fact," Neitzke, 490 U.S. at 327, or "if the 'plaintiff's realistic chances of ultimate success are slight,'" Clark v. State of Ga. Pardons & Paroles Bd., 915 F.2d 636, 639 (11th Cir. 1990) (quoting Moreland v. Wharton, 899 F.2d 1168, 1170 (11th Cir. 1990) (per curiam)).   Under 28 U.S.C. § 1915(e), the Court must dismiss the case if it determines that it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).   A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless."  Nietzke, 490 U.S. 327 (1989); Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001).   However, because plaintiff is proceeding *pro se*, her "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."   Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) (citation omitted).[2]

_____

[2] In the Court's Order of March 10, 2010, plaintiff was cautioned that although she is *pro se*, she is required to comply with the Federal Rules of Civil Procedure and

Plaintiff's complaint alleges that on or about December 23, 2003, defendant SunTrust Mortgage, Inc. ("SunTrust"), "did verbally represent to . . . [p]laintiff that they had approved a loan to them [sic] for the sum of $185,340.00 in lawful money of the United States at an annual interest rate of 4.25%." [Doc. 1-2 ¶ 8].[3]   Plaintiff alleges that "SunTrust and its loan officer, whose name is unknown, should have known that the verbal statement that they would lend the [p]laintiff 'lawful money of the United States' at an annual rate of 4.25% was a false representation that was made recklessly and with deliberate and intentional aim to deceive the [p]laintiffs by book entries."   [Id. ¶ 9].   Plaintiff asserts that she relied on these "false

_____

the Local Rules of the Northern District of Georgia.  [Doc. 2].  However, plaintiff did not amend any of her pleadings upon resubmitting her application to proceed *in forma pauperis*.

[3] The pages numbers in citations to the record refer to the pages listed in the Adobe file reader linked to this Court's electronic filing database, CM/ECF. Additionally, although plaintiff lists only herself and SunTrust in the caption, plaintiff alleges that "[t]he Plaintiff in this action is a Citizen of the United States and residents of the state of Georgia," and that "[t]he Defendant named in this complaint is SUNTRUST MORTGAGE, INC., whose Registered Agent is the CORPORATION SERVICE COMPANY, INC., . . . their Presidents, all members of the Board of Examiners whose names and addresses are unknown at this time."  [Doc. 1-2 ¶¶ 6-7].  Since plaintiff refers to SunTrust by name and also uses the term "Defendant," it is not clear whether plaintiff's use of the term "Defendant" refers only to SunTrust or to SunTrust and its "Presidents" and "all members of the Board of Examiners whose names and addresses are unknown."  Moreover, plaintiff indicates in the caption that there are multiple "Defendants" and refers throughout the complaint to various unnamed plaintiffs and defendants.  See [Doc. 1-2].  When citing or quoting from the complaint, the Court uses the terms "SunTrust" and "Defendant" as plaintiff has used them.

representations" and was "induced into signing a note and deed of trust, on or about February 28, 2008," and that "Defendants have secretly received the face value of the note multiplied by the number of stamps placed upon the note without the [p]laintiff's knowledge or consent." [Id. ¶ 10].

Plaintiff claims that SunTrust "did fail to lend the [p]laintiff lawful money of the United States for the full value of the loan" and wrote a "bad check for the sum of $185,340.00 on or about February 28, 2008, due to the deposit of the note which would be recorded in the ledger on the same day in February of 2008." [Id. ¶¶ 11-12]. Plaintiff alleges that the "Defendant, [SunTrust] and its officers and board knew or should have known that they were simply making book entries on both sides of the ledger, [a] lending practice which became a liability due to Defendant's Lending practices involving [p]laintiff's note which Defendant secretly stamped." [Id. ¶ 12]. Plaintiff also claims that "Defendant, [SunTrust] and its agents and officers did use the U.S. Mails more than twice since the date of the loan to collect money on this debt," and that the check SunTrust wrote for the sum of $185,340.00 "was not backed by or redeemable for their full face value in Federal Reserve Notes, coins, or lawful money of the United States." [Id. ¶¶ 13-14]. Plaintiff asserts that "the defendants, [SunTrust] and their Board of Officers knew or should have known that they were a party to a reusable check kiting scheme by laundering the note repeatedly which

4

they had received either directly or indirectly from one or more banks or lenders it purchased who originated the scheme."  [Id. ¶ 15].

Plaintiff asserts claims of breach of contract (Count One), "Materially [sic] Alteration of the Note" in violation of 18 U.S.C. §§ 1341 and 1343 (Count Two), and usury and racketeering in violation of 18 U.S.C. §§ 1341 and 1962 (Count Three). [Doc. 1-2 ¶¶ 17-19].  The Court will first address plaintiff's federal claims under 18 U.S.C. §§ 1341, 1343, and 1962.

In Count Two, "Materially Alteration of the Note," plaintiff asserts that "[t]he Defendant [SunTrust] and its officer, and one or more unknown banks are parties to the writing and laundering of a bad check(s) written by [SunTrust] on or around February 28, 2008," and that "[t]he Defendant is in collusion using the U.S. Mails and Wire Services to collect on this unlawful debt in violation of 18 U.S.C. 1341 (mail fraud) and 18 U.S.C. 1343 (wire fraud) and 18 U.S.C. 1962 in establishing a 'pattern of racketeering activity.'"  [Doc. 1-2 ¶ 18].  In Count Three, labeled "Usury and Racketeering," plaintiff alleges:

> By virtue of John and Jane Doe who were the banks that were writing and passing bad checks through [SunTrust], and by virtue of [SunTrust] repeated [sic] depositing these bad checks and non-existent funds, and by virtue of the fact these checks were only backed by 5 or less of their face value in cash, [SunTrust] did knowingly charge an interest rate on lawful money actually risked that was about 20 times greater than the interest rate agreed to in the note signed by the

plaintiffs.  They did this in violation of 18 U.S.C. 1341 (mail fraud) and
18 U.S.C. 1962 by engaging in this pattern of racketeering activity.

[Id. ¶ 19].

With respect to plaintiff's claims in Counts Two and Three under 18 U.S.C. §§
1341 and 1343, plaintiff appears to be asserting civil claims for mail and wire fraud.
However, "[t]he federal mail and wire fraud statutes do not, in and of themselves,
create a private right of action."  Am. Gen. Life & Accident Ins. Ins. Co. v. Ward, 509
F. Supp. 2d 1324, 1335 (N.D. Ga. 2007) (citing Napper v. Anderson, Henley, Shields,
Bradford & Pritchard, 500 F.2d 634, 636 (5th Cir. 1974)[4] ("describing the mail and
wire fraud statutes as 'purely penal'") & Wisdom v. First Midwest Bank, 167 F.3d
402, 408 (8th Cir. 1999) ("'Congress did not intend to create a private right of action
in enacting either the mail or wire fraud statutes'")).  Since plaintiff "cannot directly
recover civil damages under §§ 1341 . . . or 1343," her claims for mail and wire fraud
under Counts Two and Three are due to be dismissed for this reason alone.  Id.; see
Nietzke, 490 U.S. at 327; Bilal, 251 F.3d at 1349.

Plaintiff also appears to assert in Counts Two and Three claims under the
federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §
1962.  "In order to establish a federal civil RICO violation under [§ 1962(c)], a

---

[4] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding
precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209
(11th Cir. 1981) (en banc).

[p]laintiff must prove that (1) conduct of an enterprise, (2) through a pattern of racketeering activity, (3) resulted in injury to the plaintiff's 'business or property' (4) 'by reason of' the substantive RICO violation." Arch Ins. Co. v. Bennett, Civil Action No. 2:08-CV-0075-RWS, 2009 WL 579393, at *2 (N.D. Ga. Mar. 4, 2009) (citing Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282-83 (11th Cir. 2006) (per curiam)). "'Racketeering activity' under the RICO Act means any of a number of criminal acts, i.e., 'predicate acts,' that are listed in 18 U.S.C. § 1961(1)." Joseph v. Newport Shores Mortgage, Inc., No. Civ.A.1:05CV0904WSD, 2006 WL 1911059, at *6 (N.D. Ga. Jan. 31, 2006). "A 'pattern of racketeering activity' is defined as 'at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity.'" Id. (quoting 18 U.S.C. § 1961(5)). See also Fototec Int'l. Corp. v. Polaroid Corp., 889 F. Supp. 1518, 1521 (N.D. Ga. 1995) ("To satisfy RICO's 'pattern of racketeering activity' requirement, [p]laintiff must allege (1) that [d]efendant committed two or more federal criminal offenses, often referred to as 'predicate acts,' within a ten year time span, (2) that those predicate acts are related to one another, and (3) that those predicate acts demonstrate a continuing nature of criminal conduct.").

While mail and wire fraud may serve as predicate offenses in a RICO claim, 18 U.S.C. § 1961(1), plaintiff's fraud claims are frivolous.  Plaintiff's allegations that

7

"Defendant [SunTrust] and its officer, and one or more unknown banks are parties to the writing and laundering of a bad check(s)," that "[t]he Defendant is in collusion using the U.S. Mails and Wire Services to collect on this unlawful debt in violation of . . . 18 U.S.C. 1962 in establishing a 'pattern of racketeering activity,'" that "[SunTrust] repeated [sic] deposit[ed] these bad checks and non-existent funds, and [that] . . . these checks were only backed by 5 or less of their face value in cash," that "Defendant have [sic] secretly received the face value of the note multiplied by the number of stamps placed upon the note," and that the bank "against whom [SunTrust] wrote the check never did redeem this check in lawful money of the United States" or "have in its possession the cash to redeem that check," [id. ¶¶ 9-10 & at 6], appear to rest on "vapor money" or "unlawful money" theories. These theories are unfounded in law and cannot create a cause of action under the RICO Act.

The "vapor money" theory was described by the court in Demmler v. Bank One NA, No. 2:05-CV-322, 2006 WL 640499, at *3-4 (S.D. Ohio Mar. 9, 2006) as follows:

> Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He contends that [the lender] took his "money," i.e., the promissory note, deposited it into its own account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He

8

> contends that [the lender] . . . "created" the money through its
> bookkeeping procedures.

Id. Under the "unlawful money" theory, which is slightly different, the issuance of

"credit" is said to violate Article I, Section 10 of the United States Constitution,

which purportedly "requires a state to accept and recognize only gold and silver

coin as legal tender." Rudd v. KeyBank, N.A., No. C2-05-CV-0523, 2006 WL 212096,

at *4-5 (S.D. Ohio Jan. 25, 2006).

Courts have uniformly rejected the "vapor money" and "unlawful money"

theories and similar arguments. See McLehan v. Mortgage Elec. Registration Sys.,

No. 08-12565, 2009 WL 1542929, at *2 (E.D. Mich. June 2, 2009) ("The vapor money

theory . . . and 'similar arguments have been rejected by federal courts across the

country.'") (internal marks and citations omitted); Demmler, 2006 WL 640499, at *1,

3-4 (dismissing state law claims and claims under the National Bank Act, Truth in

Lending Act, FDCPA, Fair Credit Reporting Act, and RICO Act, finding that it

would be a "waste of judicial resources to delve into the voluminous allegations

contained in Plaintiff's twenty-one count complaint" because claims based on the

"vapor money" theory are "utterly frivolous" and "patently ludicrous"); Rene v.

Citibank NA, 32 F. Supp. 2d 539, 544-45 (E.D.N.Y. 1999) (rejecting claims that check

given by lender "did not represent legal tender because it was not backed by 'lawful

money' (i.e., gold, coins, federal reserve notes)" and that because lender did not

have an amount equal to the face value of the loan in its vault, and merely "transferred some book entries," lender had created illegal tender) (internal marks omitted); United States v. Schiefen, 926 F. Supp. 877, 880-81 (D.S.D. 1995) (rejecting argument that there was insufficient consideration to secure promissory note because lender had "created money" by means of bookkeeping entry, and noting argument that "United States currency is unbacked paper has been rejected by numerous courts"); Nixon v. Individual Head of St. Joseph Mortgage Co., 615 F. Supp. 898, 899-900 (N.D. Ind. 1985) (dismissing claims of breach of contract, fraud, usury, "illegality," unjust enrichment, and racketeering, stating that plaintiff's "unlawful money" allegations were "absurd," and that "[p]rivate parties may enter into transactions to trade whatever they agree on as having equal value," so that a loan transaction is not invalid merely because "credit" is issued).

Plaintiff's RICO claims, which are premised on these meritless theories, are therefore due to be dismissed as frivolous.  See Mother: Vertis-Mae v. Argent Mortgage Co., LLC, No. 1:07-CV-2469-TWT, 2008 WL 1995363, at *1, 3 (N.D. Ga. May 5, 2008), adopted at *1 (dismissing complaint that was based on unlawful money theory); Tuttle v. Chase Home Fin., LLC, No. 2:08-CV-574, 2008 WL 4919263, at *3-4 (D. Utah Nov. 17, 2008), adopted at *1 (dismissing claims based on the

unlawful money or "redemption" theory and explaining that the theory had absolutely "no basis in law").[5]

With regard to plaintiff's breach of contract claim in Count One, she alleges only that SunTrust and its officers "failed to lend the [p]laintiff lawful money of the United States and instead substituted a bad check with the intended purpose of circulating it as money."  [Doc. 1 ¶ 17].  "The party claiming breach of contract has the burden of pleading and proving (1) the subject matter of the contract, (2) consideration, and (3) mutual assent by the parties to all of the contract terms." Importers Serv. Corp. v. GP Chems. Equity, LLC, 652 F. Supp. 2d 1292, 1300 (N.D. Ga. 2009) (citing O.C.G.A. § 13-3-1 & Broughton v. Johnson, 545 S.E.2d 370, 371 (Ga. App. 2001)).  "Once such a contract is shown, the elements of a right to recover for the breach of said contract are (1) the breach and (2) 'the resultant damages to the party who has the right to complain about the contract being broken.'"  Id. (quoting

---

[5] Although plaintiff labels Count Three as "Usury and Racketeering," she fails to specify which usury laws she contends were actually violated and refers to multiple plaintiffs in this count, which does not put SunTrust on notice as to how plaintiff was actually harmed by its conduct.  Plaintiff does allege that "the Defendant" committed mail fraud by attempting to collect on an "unlawful debt," [Doc. 1-2 ¶ 18], which is defined by the RICO Act, in part, as "a debt . . . which was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate," 18 U.S.C. § 1961(6),  but plaintiff has not alleged any facts that indicate the loan was "usurious" within the meaning of § 1961.

Budget Rent-A-Car of Atlanta, Inc. v. Webb, 469 S.E.2d 712, 713 (Ga. App. 1996) (internal citation omitted)).

While plaintiff alleges that SunTrust "did verbally represent to "[p]laintiff that they had approved a loan to them [sic] for the sum of $185,340.00 in lawful money of the United States at an annual interest rate of 4.25%," which was a "false representation that was made recklessly and with deliberate and intentional aim to deceive the [p]laintiffs by book entries," [Doc. 1-2 ¶¶ 8-9], her claims that SunTrust failed to lend her "lawful money of the United States" are frivolous and are not well grounded in law as previously discussed. See Demmler, 2006 WL 640499, at *1, 3-4; Rene, 32 F. Supp. 2d at 544-45; Nixon, 615 F. Supp. at 899-900. Moreover, plaintiff has failed to place SunTrust on notice as to how it specifically committed a breach, since plaintiff again refers to multiple plaintiffs and defendants. Thus, plaintiff's breach of contract claim, which appears to be her only state law claim, is due to be dismissed. Therefore, for the foregoing reasons, it is **RECOMMENDED** that plaintiff's proposed complaint, [Doc. 1-2], be **DISMISSED WITHOUT PREJUDICE** as frivolous. See 28 U.S.C. § 1915(e)(2)(B)(ii).

12

**B.    Plaintiff's Motion for a Temporary Injunction and Restraining Order**

Plaintiff has also filed a "Motion for a Temporary Injunction and Restraining Order." [Doc. 1-4].[6]  In her motion, plaintiff asserts that "a day before [her] property went to the courthouse steps, [p]laintiff was required to pay $1,213.00 within 20 minutes notice," that she was unable to produce the funds, that "Defendant took [p]laintiff file a writ of dispossessory [sic] in the Magistrate Court of Gwinnett County,[7] where a default judgment was against [p]laintiff," that she subsequently brought an action in the Superior Court of Gwinnett County for "Declaratory Judgment seeking to invoke her right based upon the words of the Congresswoman, Marcy Kaptur," and that "the Defendant determined to evict [p]laintiff under the current circumstances whereby Defendant was able to get the state court to dismiss [p]laintiff action without a hearing and deprived the [p]laintiff the right to explain herself in a meaningful way."  [Id. ¶¶ 4-5, 7-8].  Plaintiff asserts that she is "in harms-way of being evicted and made homeless if this Honorable Court withholds remedy [p]laintiff needs and is entitled to."  [Id. ¶ 7].

---

[6] The motion may be moot if the District Court adopts the recommendation to dismiss the complaint as frivolous, but in any event, the motion is due to be denied on the merits as discussed herein.

[7] Plaintiff attached to her pleadings a copy of the Writ of Dispossessory, which was filed on February 5, 2010.  [Doc. 1-12 at 2-3].

A plaintiff seeking a temporary restraining order ("TRO") must establish that: (1) there is a substantial likelihood of success on the merits; (2) irreparable injury will be suffered if relief is not granted, that is, there is no adequate remedy at law; (3) the threatened injury outweighs any harm relief would inflict on the non-movant; and (4) the entry of the requested relief would serve the public interest. Siebert v. Allen, 506 F.3d 1047, 1049 (11th Cir. 2007) (per curiam); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam). The same factors are considered in deciding whether to grant a TRO or a preliminary injunction. Schiavo, 403 F.3d at 1225.

The Eleventh Circuit has held that "a preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." Suntrust Bank v. Houghton Mifflin Co., 252 F.3d 1165, 1166 (11th Cir. 2001) (per curiam) (citing Canal Auth. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974)). The decision to grant or deny a TRO "'is within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion.'" Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002) (quoting Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002)).

14

Plaintiff has not satisfied her burden for obtaining a TRO or preliminary injunction.   Indeed, plaintiff has offered no argument with regard to the prerequisites she must satisfy to obtain a TRO and preliminary injunction.   For the reasons discussed earlier, plaintiff has not shown that she has a substantial likelihood of success on the merits of her claims, which are frivolous.[8]   Therefore, it is **RECOMMENDED** that plaintiff's motion, [Doc. 1-4], be **DENIED**.

For the foregoing reasons, plaintiff's request to proceed *in forma pauperis*, [Doc. 3], is **GRANTED**, but it is **RECOMMENDED** that plaintiff's complaint, [Doc. 1-2], be **DISMISSED WITHOUT PREJUDICE** as frivolous, and that plaintiff's motion for a temporary injunction and restraining order, [Doc. 1-4], be **DENIED**.   See 28 U.S.C. § 1915(e)(2)(B)(ii).

**IT IS SO ORDERED AND RECOMMENDED**, this 19th day of April, 2010.

*Russell G. Vineyard*
_____
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[8] While the first paragraph of plaintiff's motion includes references to various federal statutes and constitutional provisions, [Doc. 1-4 ¶ 1], she offers no argument in support of these purported causes of action, except for vague references to her right to due process of law, [id. ¶¶ 8, 10, 19].   Therefore, plaintiff has not shown a likelihood of success on the merits of any of these claims.